**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **ROBERT G. OTTO, et al.** | : | **CIVIL ACTION** |
| | : | |
| **vs.** | : | |
| | : | **No. 15-3217** |
| **CITY OF PHILADELPHIA, et al.** | : | |
| | : | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITY OF**
**PHILADELPHIA, MAYOR MICHAEL NUTTER, AND POLICE**
**COMMISSIONER CHARLES RAMSEY'S MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT AND THE NORMAN COMPLAINT**
**PURSUANT TO FED. CIV. P. 12(B)(6)**

Defendants City of Philadelphia, Mayor Michael Nutter, and Police Commissioner

Charles Ramsey (hereafter "Municipal Defendants"), by and through their undersigned

counsel, hereby file this Memorandum of Law in Support of their Motion to Dismiss

Second Amended Complaint and the Norman Complaint for Failure to State a Claim

pursuant to Fed. R. Civ. P. 12(b)(6).

**I.    PROCEDURAL HISTORY**

In November of 2013, Plaintiffs initiated this action by filing a summons in the

Court of Common Pleas in Philadelphia.  On June 4, 2015, Plaintiffs filed a Complaint,

naming as defendants the City of Philadelphia, as well as District Attorney Seth Williams

(hereafter "D.A. Williams") and the Office of the District Attorney of Philadelphia County

(hereafter the "DAO").  In their Complaint, Plaintiffs alleged that Municipal Defendants

made several defamatory statements that resulted in a violation of their civil rights.  On

June 9, 2015, this action was removed to this Court pursuant to 28 U.S.C. § 1441 since

Plaintiffs' Complaint contained allegations of violations of the Plaintiffs' Federal Civil Rights, seeking relief under 42 U.S.C. § 1983.

On July 24, 2015, Plaintiffs filed their First Amended Complaint naming as Defendants the City of Philadelphia, Mayor Michael Nutter, Police Commissioner Charles Ramsey, D. A. Williams and the DAO. *See* Am. Compl., Docket Doc. No. 10.  After Defendants filed a Motion to Dismiss the Amended Complaint, Plaintiffs sought leave to file a Second Amended Complaint, which was ultimately filed on October 13, 2015. *See* Sec. Am. Compl., Docket Doc. No. 27 and attached hereto as Exhibit A.  In their Second Amended Complaint, Plaintiffs bring claims against all named defendants for violations of their civil rights pursuant to 42 U.S.C. § 1983, and state law torts for defamation and false light. *Id.*

Plaintiff Linwood Norman's action was initiated against the Municipal Defendants on July 30, 2015 by Writ of Summons in the Philadelphia Court of common Pleas, and later filed his Complaint against these defendants on October 16, 2015 bringing the same legal claims as the Second Amended Complaint, and making no additional unique factual allegations. *See* Norman Complaint, attached hereto as Exhibit B.  Because the Norman Complaint included federal claims and the same factual allegations, Municipal Defendants filed for removal and moved to have both actions consolidated in the above-captioned docket number. *See* Docket Doc. No. 28.

Plaintiffs fail to state a claim in their Second Amended Complaint and the Norman Complaint, and therefore Municipal Defendants seek the dismissal of all Plaintiffs' claims against them with prejudice pursuant to Fed. R. Civ. O. 12(b)(6).

2

## II.        STATEMENT OF THE ALLEGED FACTS

Plaintiffs allege that during a meeting on November 26, 2012, D.A. Williams demanded that Commissioner Ramsey remove the Plaintiffs from the Narcotics Field Unit of the Philadelphia Police Department (hereafter "NFU"). Sec. Am. Compl. at ¶ 64; Norman Compl. at ¶ 43.  Commissioner Ramsey resisted D.A. Williams' demand for the transfer of Plaintiffs, and informed the District Attorney that any such request should be made in writing, and not orally. *Id.* at ¶¶ 65 and 68; *Id.* at ¶¶ 44 and 47.  As a result, on December 3, 2012, D.A. Williams caused to be delivered to Commissioner Ramsey a letter which stated that the DAO would no longer be using the Plaintiffs as witnesses in narcotics related cases, would no longer accept any narcotics cases for charging where any of the Plaintiffs are necessary witnesses, and would no longer approve any search or arrest warrants on narcotics cases when any of the Plaintiffs were the affiant. *Id.* at ¶ 51; *Id.* at ¶30; *see also* Letter from D.A. Williams to Commissioner Ramsey, attached to Plaintiffs' Second Amended Complaint and the Norman Complaint as Exhibit A.  Plaintiffs claim that the aforementioned letter was "irresponsible, outrageous, defamatory, and otherwise actionable." *Id.*

On December 3, 2012, after the letter had been sent to Commissioner Ramsey, First Assistant District Attorney Edward McCann instructed Tasha Jamerson, the Director of Communications for the DAO, that she had authority to communicate to the press that the DAO, based upon prosecutorial discretion, would no longer be using the Plaintiffs in narcotics cases. *Id.* at ¶¶ 83-84; *Id.* at ¶¶ 62-63.  Plaintiffs claim that the dissemination, publicizing, and publication to the media by Jamerson of the contents of the December 3, 2012 letter was the policy and practice of the DAO, which was carried out in bad faith and

with deliberate indifference to, and reckless disregard for, the liberty interests and the reputational, interests of Plaintiffs. *Id*. at ¶¶ 88-89; *Id*. at ¶¶ 67-68.

On December 4, 2012, Police Commissioner Ramsey by directive, authorized the transfer of Plaintiffs Otto, Reynolds, Liciardello, Speiser, Spicer, and Betts from NFU to other departmental assignments effective 12:01 a.m. on December 5, 2012. Sec. Am. Compl. at ¶ 90. These Plaintiffs claim that their transfers from NFU, and the subsequent dissemination to the public of these transfers, did, among other things, stigmatize and humiliate Plaintiffs, create false impressions about Plaintiffs, and disparage their reputations. *Id*. at ¶ 98. Furthermore, as a result of these Plaintiffs' transfers and the dissemination of the contents of the December 3, 2012 letter, hundreds of criminal cases were withdrawn or dismissed, which led to an increase in public scorn of the Plaintiffs. *Id*. at ¶¶ 100-105.

On January 17, 2014, Commissioner Ramsey gave a press conference wherein he stated that at least four of the six Plaintiffs were being probed by a federal grand jury, that all six Plaintiffs were to be pulled off street duty, and were required to surrender their weapons. Sec. Am. Compl. at ¶¶ 106-108; Norman Compl. at ¶¶ 86-89. Plaintiffs further aver that not only was Commissioner Ramsey acting as a policymaker for the Philadelphia Police Department (hereafter "PPD") when he made statements on January 17, 2014, but that at *all times pertinent* to this action Commissioner Ramsey acted as a policymaker for the PPD. *Id*. at ¶¶ 31 and 109; *Id*. at ¶¶ 16 and 90. Plaintiffs also allege that at *all times pertinent* to this action, Mayor Nutter acted as policymaker for Defendant City of Philadelphia. *Id*. at ¶ 37; *Id*. at ¶ 22.

On July 29, 2014, all of the Plaintiffs, with the exception of Plaintiff Otto, were indicted by the United States, which led to their termination from the PPD. *Id*. at ¶ 113; *Id*. at ¶ 94.  On July 31, 2014, Commissioner Ramsey and Mayor Nutter held a joint, televised press conference where Commissioner Ramsey stated "I have been a police officer for more than 40 years and this is one of the worst corruption cases that I have ever heard." *Id*. at ¶ 116; *Id*. at ¶97.  At that same press conference, Mayor Nutter stated that the indicted officers were "sick scumbags." *Id*. at ¶ 115; *Id*. at ¶ 96.

After a jury trial in the Eastern District of Pennsylvania, the five indicted Plaintiffs were acquitted on all charges. *Id*. at ¶ 122; *Id*. at ¶ 103.  Following their acquittal, these five Plaintiffs were reinstated to their jobs as Philadelphia Police Officers and given back pay. *Id*.  Plaintiffs also aver that the damages being sought in this present action do not include any lost pay, compensation, benefits, and overtime contractually owed to the Plaintiffs as employees of the City resulting from job action taken against the Plaintiffs by the City, nor does the relief sought here include any request for the return of assignments. *Id*. at ¶ 129; *Id*. at ¶ 110.

Plaintiffs further allege that in a July 27, 2015 Philadelphia Daily News article, after the Plaintiffs were reinstated to the PPD, Commissioner Ramsey made more defamatory statements, specifically that it was unfortunate that the U.S. Attorney's Office did not win the case against Plaintiffs. *Id*. at ¶ 136; *Id*. at ¶ 117.  Plaintiffs aver that Commissioner Ramsey's statement should be read as an invalidation of the name-clearing hearing received by Plaintiffs from their criminal trial, arbitration hearing, and reinstatement. *Id.*

Plaintiffs claim that as a result of defamatory statements made by the Municipal Defendants, they have and will suffer substantial pecuniary losses and emotional distress as a result of the "blackening of their reputations in the eyes of prospective employers." *Id*. at ¶¶ 131-132; *Id*. at ¶¶ 112-113.  In addition, Plaintiffs assert that they are entitled to a name-clearing hearing due to the alleged defamatory and false light statements made by the Municipal Defendants. *Id*. at ¶ 130; *Id*. at ¶111.

Plaintiffs fail to state a claim in their Second Amended Complaint and the Norman Complaint, and therefore Municipal Defendants seek the dismissal of all Plaintiffs' claims against them with prejudice pursuant to Fed. R. Civ. O. 12(b)(6).

## III.   THE SECOND AMENDED COMPLAINT AND THE NORMAN COMPLAINT SHOULD BE DISMISSED FOR FAILURE   TO   STATE   A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(6).

### A.   Standard of Review

The applicable standard for a Rule 12(b)(6) motion is well settled.  Under this Rule, the Court must dismiss an action on motion made before a responsive pleading is filed, when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To plead a viable cause of action, the allegations must transcend the "speculative" and "conceivable," and must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 566, 570 (2007). The Court must disregard "legal conclusions" and "conclusory statements," and must scrutinize the well-pleaded factual allegations to ensure that they are more than "'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Morse*

*v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (disregarding "bald assertions" and "legal conclusions" in evaluating motion to dismiss).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). "A plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

    **B.**    **Federal Constitutional Claims Brought Against Mayor Michael Nutter and Police Commissioner Charles Ramsey**

        **1.**    **Plaintiffs' claims against Mayor Michael Nutter and Police Commissioner Charles Ramsey in their "Official Capacity" fail as a matter of law.**

Plaintiffs purport to sue Mayor Nutter and Commissioner Ramsey in their "official capacity." Sec. Am. Compl. at ¶¶ 32 and 36; Norman Compl. at ¶¶ 17 and 21. Any such claim fails as a matter of law. In *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), the Supreme Court held that a suit brought against a public official in their official capacity is equivalent to a suit brought against the public entity. The Court explained that official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." Such suits, "in all respects other than name, to be treated as a suit against the entity. It is *not* suit against the official personally, for the real party in interest is the entity." *Id.* (citations omitted).

Therefore, all claims brought against Mayor Nutter and Commissioner Ramsey properly are treated as an action against the City of Philadelphia. *See Stana v. School*

*District of Pittsburgh*, 775 F.2d 122, 130 (3rd Cir. 1985) (actions of an official acting in his or her official capacity are to be equated with the actions of the City itself).  Thus, Plaintiffs' claims against Mayor Nutter and Commissioner Ramsey in their official capacity fail as a matter of law.

> **2.      Plaintiffs' claim for violations of their procedural due process rights pursuant to 42 U.S.C. § 1983 fails as a matter of law.**

Plaintiffs have brought a § 1983 action for a deprivation of due process rights in connection with alleged defamatory statements made by Mayor Nutter and Commissioner Ramsey.  Plaintiffs claim they suffered injuries from stigmas to their reputations caused by these alleged defamatory statements.   As a result, Plaintiffs claim they are entitled to damages for loss of employment prospects and emotional distress, and to have a name-clearing hearing.

The Third Circuit "has held explicitly that public employment is not a fundamental right entitled to substantive due process protection." *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006).    Thus, plaintiffs' only viable claim against the Municipal Defendants is a procedural due process claim.  It is well-settled law that reputation alone is not an interest protected by the Due Process Clause, and that "defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Township of Falls*, 890 F.2d 611, 619 (3d. Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 701-712 (1976).   In other words, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest. *Hill*, 455 F.3d at 236.   This has been

referred to as the "stigma-plus" test. *Id*.

The Third Circuit has also held that "the possible loss of future employment opportunities is patently insufficient to satisfy the requirement imposed by *Paul* that a liberty interest requires more than mere injury to reputation." *Clark*, 890 F.2d at 620. Additionally, a procedural due process claim that evokes emotional trauma is insufficient to constitute the "plus" factor required to successfully state this claim. *Good v. City of Sunbury*, 352 F. App'x 688, 691 (3d Cir. 2009) (citing *Baraka v. McGreevey*, 481 F.3d 187, 208 (3d Cir. 2007).

Plaintiffs have failed to allege that Mayor Nutter and Commissioner Ramsey, in the course of making public statements related to the federal grand jury investigation, federal indictments of the Plaintiffs, and their subsequent acquittal, took actions that deprived them of any right or status guaranteed by state law or the Constitution.

> i.   *Plaintiff Robert G. Otto has failed to allege sufficient facts in support of his procedural due process claim.*

Plaintiff Robert G. Otto was one of the six officers included in D.A. Williams' December 3, 2012 letter to Commissioner Ramsey, which stated that the DAO would no longer be using Plaintiff Otto as a witness in narcotics related cases. Sec. Am. Compl. at ¶ 51.  As a result of the decision made by the DAO with respect to Plaintiff Otto, Commissioner Ramsey ordered the transfer of Plaintiff Otto from NFU to the South Detectives Division. *Id*. at ¶ 90.  Plaintiff Otto claims that Commissioner Ramsey's publication of his decision to transfer Plaintiffs caused a stigma to be placed on their reputations. *Id*. at ¶ 98.  By January 17, 2014, Commissioner Ramsey informed the media that four of the six Plaintiffs were being probed by a federal grand jury, and that all six (including Otto) were being pulled off of street duty. *Id*. at ¶¶ 106-107.

Accepting all of Plaintiff Otto's allegations as true, that Commissioner Ramsey's public statements imposed a stigma to his reputation, he has failed to show that this stigma was accompanied by a deprivation of some additional right or interest. *Hill*, 455 F.3d 225, 236.  Here, Plaintiff Otto was merely transferred from one division of the PPD to another, and was later taken off of street duty, with pay, after it was revealed that a federal grand jury was conducting a probe of at least four of the six individuals named in D.A. Williams' letter.  Commissioner Ramsey's actions did not deprive Plaintiff Otto of any right or interest he held.[1]

Plaintiff Otto further alleges that he filed a grievance under the collective bargaining agreement for his transfer out of NFU without just cause on December 4, 2012. Sec. Am. Compl. at ¶ 186.  Otto further states that his grievance has yet to be arbitrated and therefore has not received the benefit of a name-clearing hearing. *Id*.  To the contrary, Plaintiff Otto's own factual allegations, taken as true for purposes of this motion, indicate that in fact Otto *has* process available to him in the form of an arbitration hearing in order to clear his name of any wrongdoing.  The allegation that his grievance has yet to be arbitrated does not support a claim for a violation of procedural due process rights.

Plaintiff Otto does not claim to have been demoted in rank, suspended, or to have lost any pay.  Once the DAO made the decision to decline prosecution on any drug related matters involving Plaintiff Otto, he no longer could serve in his capacity as a lieutenant in NFU.  Furthermore, Commissioner Ramsey pulled Plaintiff Otto from street duty, only

---

[1] The Third Circuit has held that a collective-bargaining agreement can create a property interest in not being suspended without just cause.  *Dee v. Borough of Dunmore*, 549 F.3d 225, 231-32 (3d Cir. 2008).  Plaintiff Robert Dee, Jr. was suspended for eight (8) days for not having undergone specific training to fulfill his duties as a firefighter. *Id*. at 228.  The Third Circuit found that a suspension without just cause did in fact implicate a right or interest germane to his procedural due process claim.  But the Second Amended Complaint does not allege that plaintiff Otto was suspended.  *Dee* is therefore inapposite here.

after a federal grand jury began to probe the activities of Plaintiffs. The decision to convene a grand jury was not made by Commissioner Ramsey or any other City of Philadelphia official. This was a decision made by the United States government, and Commissioner Ramsey reacted in the only way possible; to pull an officer from the street so as to avoid the need for that officer to make arrests and testify in court. Furthermore, any statements made by Commissioner Ramsey regarding his decision to transfer and/or pull officers from street duty stem from his responsibilities as Police Commissioner for the PPD.[2]

Plaintiff Otto has failed to allege that the Municipal Defendants took any action that resulted in the extinguishment of a right or status guaranteed by state law or the Constitution. Furthermore, Plaintiff Otto has by his own allegations acknowledged that a name-clearing hearing is available to him by way of an arbitration of his grievance for having been transferred out of NFU. As a result, Plaintiff Otto has failed to state a claim under § 1983 for a deprivation of his procedural due process rights.

        *ii.*     *Plaintiffs Michael Spicer, Brian Reynolds, Perry Betts, John Speiser, Thomas Liciardello, and Linwood Norman have failed to allege sufficient facts in support of their procedural due process claim.*

Plaintiffs Spicer, Reynolds, Betts, Speiser, Liciardello, and Norman (hereafter "Indicted Plaintiffs") allege that Commissioner Ramsey's publication to the media of their transfers out of NFU and their removal from street duty caused a stigma to be placed on their reputation. Sec. Am. Compl. at ¶ 98; Norman Compl. at ¶ 77. Similarly to Plaintiff Otto, the Indicted Plaintiffs have failed to show that this stigma was accompanied by a

---

[2] Plaintiffs have conceded as much in their Second Amended Complaint. Plaintiffs contend that at all times pertinent to this action Commissioner Ramsey acted as a policymaker for the PPD. Sec. Am. Compl. at ¶ 31. Commissioner Ramsey has a duty to inform the public of his official decisions/directives when members of his police force are being probed by a federal grand jury, which of course was the truth.

deprivation of some additional right or interest.  As argued above, failure to allege that the Municipal Defendants took any action that resulted in the extinguishment of a right or status guaranteed by state law or the Constitution in connection with alleged defamatory statements, precludes the Indicted Plaintiffs from bringing a federal claim under § 1983 for a violation of due process rights. *See* Section B.2.i, *supra*.

Among the new allegations averred by the Indicted Plaintiffs, is that the Arbitrator who ruled on their reinstatement to the PPD "passed on ruling" on whether there was just cause to transfer them out of NFU. Sec. Am. Compl. at ¶ 182; Norman Compl. at ¶ 163. Furthermore, the Indicted Plaintiffs claim that the reinstatements that the Arbitrator ordered do not make sense or make them whole because the Indicted Plaintiffs will lose out on overtime pay. *Id*. at ¶ 183; *Id*. at ¶ 164.  While Plaintiffs disparage the Arbitrators Award and allege the loss of overtime pay, in the same breath they allege that damages sought in this action do not include any loss of overtime and defer in total to the arbitration process. *Id*. at ¶ 129; *Id*. at ¶ 110.

A reading of the Arbitrators Award shows that not only did the Arbitrator consider the transfers of the Indicted Plaintiffs, but also the monetary relief awarded to these Plaintiffs included overtime wages. *See* Arbitrators Award at p. 3, ¶ 3, attached hereto as Exhibit C.  As clearly stated in the award, all grievances were consolidated, the award satisfies all monetary losses related to transfer and discharge, and includes the loss of overtime pay. *Id*.  In addition, Plaintiffs are not entitled to any guarantee of future overtime pay, as the Third Circuit has held that "the possible loss of future employment opportunities is patently insufficient to satisfy the requirement imposed by the *Paul* Court that a liberty interest requires more than mere injury to reputation." *See Clark*, 890 F.2d at 620.

The Indicted Plaintiffs additionally contend that Mayor Nutter and Commissioner Ramsey deprived them of their due process rights by making defamatory statements at a July 31, 2014 press conference, which occurred after the federal government handed down the criminal indictment. Sec. Am. Compl. at ¶¶ 113-117; Norman Compl. at ¶¶ 94-98. This additional claim also fails. Even though the Indicted Plaintiffs were terminated, they have been reinstated to the PPD with full back pay and they received a criminal trial in which they were given an opportunity to clear their names. In other words, the Plaintiffs have received all of the process that was due.

When a public employee suffers a deprivation of his or her liberty interest under the stigma-plus test, "the employee is entitled to a name-clearing hearing."[3] *Hill*, 455 F.3d at 236. The Third Circuit has never held that a litigant who prevails on a stigma-plus claim is entitled to damages in addition to a name-clearing hearing; indeed, the Court of Appeals has repeatedly rejected stigma-plus claims where the plaintiffs had received a name-clearing hearing. *See*, *e.g.*, *Smith v. Borough of Dunmore*, 516 F. App'x 194, 201 (3d Cir. 2013) (affirming grant of summary judgment in defendant's favor and holding that plaintiff's "hearing and the newspaper article published the following day sufficed to provide [plaintiff] with a remedy for any harm done to his reputation") (citing *Hill*, 455 F.3d at 236). The Third Circuit has further held that a criminal trial satisfies a government agency's due process obligations in stigma-plus claims. *Graham v. City of Phila.*, 402 F.3d 139, 144 (3d Cir. 2005). The opinion in *Graham* points out that the plaintiff's criminal

---

[3] Furthermore, "in this federal district, a stigma plus claim requires that a plaintiff plead that a timely request for a name-clearing hearing was made and that the request was denied." *Berkery v. Wissahickon Sch. Bd.*, No. 14-5265, 2015 WL 1443275, at *7 (E.D. Pa. Mar. 27, 2015) (citing cases and dismissing stigma-plus claim for failure to allege request for name-clearing hearing). The Second Amended Complaint and the Norman Complaint do not allege that Plaintiffs requested a name-clearing hearing, though they involuntarily received one in the form of a criminal trial.

trial "substantially vindicated his reputational interest, and significantly reduced the prospect that he would be erroneously deprived of that interest." *Id*. at 146.  Because a "criminal trial constitutes ample 'process' obviating [any] claim for a name-clearing hearing," *Id*. at 147, the court of appeals "h[e]ld that where, as here, following a criminal trial, an individual acquitted at trial advances a stigma-plus claim alleging reputational injury flowing from his or her alleged criminal conduct, that individual is not entitled to a name-clearing hearing under the Due Process Clause." *Id*.

Plaintiffs attempt to circumvent the *Graham* holding by alleging that Commissioner Ramsey's statements following the criminal trial undermined or invalidated the effect of Plaintiffs' acquittal. Sec. Am. Compl. at ¶¶ 133-134, 136; Norman Compl. at ¶¶ 114-115, 117.  A reading of these alleged comments show that they are within the scope of the prior statements and issues surrounding the termination that the Plaintiffs had an opportunity to address with their name-clearing hearings.   Unless the Commissioner's post-trial statements are embroidered with allegations that exceed the scope of the criminal trial and the arbitration, then those statements cannot form the basis of Plaintiffs due process claim. *Garcia v. Kankakee County Housing Authority,* 279 F.3d 532, 535 (7th Cir.2002).

The *Graham* holding applies here.  Plaintiffs have received a criminal trial, thereby obviating any claim to the only remedy the Third Circuit has approved for stigma-plus claims.  But even if damages were an appropriate remedy in stigma-plus claims, Plaintiffs have also been reinstated to the PPD with full back pay.  Sec. Am. Compl. at ¶ 122; Norman Comp. at ¶ 103.

Since the Indicted Plaintiffs rely upon their termination from employment with the PPD as sufficient to support their procedural due process claim, such an approach is

unsustainable:

> [U]nder *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), government acts defaming an individual implicate a liberty interest only where the individual suffers a related alteration of his legal status or deprivation of a right recognized under state law. *See id.* at 710-12. [Plaintiff] suffered no such alteration. He was reinstated with back pay ..., and his due process claim thus fails the *Paul* "reputation plus" test. *See Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.), *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989); *see also Sparks v. City of Atlanta,* 496 F.Supp. 770, 774 (N.D.Ga.1980) ("stigma" suffered by police officer whose suspension was rescinded does not give rise to due process liberty interest).

*Stolinski v. Pennypacker,* No. 07-3174, 2008 WL 5136945, at *11 (D.N.J. Dec. 4, 2008) (citing *Dobosz v. Walsh,* 892 F.2d 1135, 1140-41 (2d Cir.1989)).  It is difficult to imagine what additional process could possibly be due here.  Because Plaintiffs have received all the process to which they were entitled, their procedural due process claim should be dismissed with prejudice.

### 3.   Mayor Michael Nutter and Commissioner Ramsey are entitled to Qualified Immunity.

The Supreme Court has established a two-step analysis that governs whether an official is entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, courts consider whether the facts alleged in the complaint show the violation of a constitutional right.  *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 176 (3d Cir. 2015).  If so, courts then determine whether the right at issue was clearly established at the time of the alleged misconduct.  *Id.*  The Court has discretion to analyze the two steps in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Municipal Defendants have already demonstrated that the circumstances in this case fail to implicate Plaintiffs' liberty interests and that Plaintiffs received all the process

that is due.  Indeed, the Third Circuit has never held that plaintiffs are entitled to anything more than a name-clearing hearing, which they have already had in the form of a criminal trial. *See Graham*, 402 F.3d at 144 (holding that plaintiff's criminal trial obviated need for name-clearing hearing).  In the absence of any case law demonstrating that a stigma-plus claim will lie when Plaintiffs' termination of employment followed their federal indictment, and Plaintiffs have already received a name-clearing hearing, reinstatement, and back pay, it cannot fairly be said that plaintiffs' constitutional right was "clearly established" in this instance.  *Werkheiser*, 780 F.3d at 176.  Mayor Nutter and Commissioner Ramsey are therefore shielded by qualified immunity on plaintiffs' § 1983 claims.

For all of these reasons, the Court should dismiss Plaintiffs' § 1983 claims against Mayor Nutter and Commissioner Ramsey in their individual capacity.

### C.  Common Law False Light and Defamation Claims Brought Against Mayor Michael Nutter and Police Commissioner Charles Ramsey

#### 1.  Mayor Nutter and Commissioner Ramsey are High Public Officials who are absolutely immune from liability in their "Individual Capacity" for Plaintiffs' defamation and false-light claims.

Pennsylvania common law recognizes the doctrine of absolute immunity for "high public officials."  *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000).  This privilege for high public officials

> is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority.*

*Heller v. Fulare*, 454 F.3d 174, 177 (3d Cir. 2006) (quoting *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952)) (emphasis in original). Although the doctrine was first articulated in the context of defamation suits, it has since been extended to include immunity for other intentional torts, including false-light claims. *See Mariano v. Borough of Dickson City*, 40 F. Supp. 3d 411, 420 (M.D. Pa. 2014) ("High public official immunity applies to false light claims."), *recon. granted on other grounds*, 2014 WL 5795679 (M.D. Pa. Nov. 6, 2014); *Kelleher v. City of Reading*, No. 01-3386, 2001 WL 1132401, at *4 (E.D. Pa. Sept. 24, 2001) (same; citing cases).

The Supreme Court of Pennsylvania held that high public official immunity is an unlimited privilege that exempts high public officials from lawsuits for defamation, provided the statements made by the official are made in the course of his official duties and within the scope of his authority. *Lindner v. Mollan,* 544 Pa. 487, 490–91 (1996). Although ordinary local agency employees can be held liable if they have engaged in crime, actual fraud, actual malice or willful misconduct, *see* 42 Pa.C.S.A. § 8550; *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), high public officials accused of defamation enjoy absolute immunity even when willful misconduct is alleged.

In the leading case of *Factor v. Goode,* 149 Pa.Cmwlth. 81 (1992), *appeal denied,* 533 Pa. 654 (1993), a defamation suit was brought by two property owners against the Mayor of the City of Philadelphia and the Revenue Commissioner of the City of Philadelphia. In *Factor,* the Mayor and Revenue Commissioner held a press conference wherein they identified the twenty property owners with the highest delinquent real estate taxes, including the plaintiffs, and described them as "deadbeats" and "tax cheats" who think that "they're above the law." *Factor,* 149 Pa.Cmwlth. at 84. The issue before the

Commonwealth Court in *Factor* was whether the Mayor and Revenue Commissioner were entitled to absolute immunity for making allegedly defamatory remarks against the plaintiffs.

Explaining that the Mayor and the Revenue Commissioner were undeniably "high public officials," the Commonwealth Court in *Factor* held that these two officials were immune from a defamation action because Section 8550 of the Pennsylvania Subdivision Tort Claims Act (hereafter "PSCTA") did not abrogate the absolute privilege afforded high public officials. The *Factor* court explained that its review of those cases discussing Section 8550 of the PSTCA "reveal[ed] no instance in which it [was] applied to defeat the absolute privilege of a high public official, as Appellants suggest." *Factor,* 149 Pa.Cmwlth. at 87. The *Factor* court concluded that Section 8550 of the PSTCA has "no bearing on the common law absolute privilege regarding high public officials, but rather addresses only those employees of local agencies who do not fall within the category of a high public official." *Id.*

Mayor Nutter and Commissioner Ramsey undeniably are high public officials in the City of Philadelphia.  The alleged defamatory statements made by these Defendants were made after the DAO declared they would decline to prosecute cases in which the Plaintiffs are necessary witnesses and after the federal government handed down an indictment containing forty-seven (47) criminal counts against six police officers of the PPD.  Plaintiffs attempt to plead sufficient facts to state a claim amounts to nothing more than taking comments made by the Commissioner and the Mayor out of context during their July 31, 2014 conference before the media, in an effort to show that defendants acted with malice towards Plaintiffs in making those comments.

Commissioner Ramsey's statement, as alleged in paragraph 116 of the Second Amended Complaint and paragraph 97 of the Norman Complaint, was actually given on July 30, 2014 during a joint press conference with U.S. Attorney Zane Memeger.  In that press conference, Memeger formally announced the federal indictments.  *See* http://abc7.com/news/6-philadelphia-narcotics-officers-arrested-/228811/.  Commissioner Ramsey's comment that this was the worst case of corruption he ever *heard of* was based upon the allegations made in the federal indictment, which was not prepared by Commissioner Ramsey or Mayor Nutter.  Furthermore, the Commissioner's comment was made while acting on his official duty to inform the public about potential corruption within the police department charged with serving the community.

The July 31, 2014 joint press conference with Mayor Nutter and Commissioner Ramsey was held in response to reports that the charges in the federal indictment were indicative of widespread corruption with the PPD.  *See* http://philadelphia.cbslocal.com/2014/07/31/city-officials-react-to-philadelphia-police-corruption-indictments/.  Mayor Nutter stated that "he will not allow six sick scumbags to negatively impact the reputations of six thousand plus men and women who risk their lives every single day." *Id*.  Commissioner Ramsey further added that the majority of officers in NFU and the PPD were not involved in this kind of alleged criminal activity and took specific issue with the media's portrayal of a wholly corrupt PPD. *Id*.  Both Mayor Nutter and Commissioner Ramsey acted in their official roles and clearly had the authority, given their positions, to assure the public these allegations of department wide corruption were unfounded.

Plaintiffs' new allegations regarding Commissioner Ramsey's post criminal trial statements also do not support their claims of false light and defamation.  A reading of paragraph 136 of the Second Amended Complaint and paragraph 117 of the Norman Complaint shows that Commissioner Ramsey is responding to the issue of what you do with an officer whose credibility has been impeached by criminal charges lodged by the federal government, because those officers will not be used by the DAO to prosecute cases and therefore arrests made by these officers will not only fail to garner a conviction, but fail to even see a court room.  Commissioner Ramsey made these statements during the course of his duties as police commissioner, which are a matter of significant public concern.

Directly on point to the instant matter is *Greene v. Street, et al.*, No. 10-4529, 2011 WL 208382 (E.D. Pa. Jan. 20, 2011).  In this case, Plaintiff Greene, former Sheriff for Philadelphia County, claimed that Defendant John Street, former Mayor and Chairman of the PHA's Board of Commissioners, defamed him "in press conferences and other correspondence with members of the press, including unverifiable statements that 'other women' had come forward to complain about Mr. Greene, references to 'others whose identities we may never know' as 'target females' of Mr. Greene, and comparisons ... to a drug addict and sex addict." *Id*. at *7.  In addition, Plaintiff alleged that Defendant Street publicly characterized previous sexual harassment claims in a manner that placed him "in a false light and that is highly offensive to a reasonable person. *Id*. Namely, Chairman Street paraded allegations of sexual harassment before the news media, labeled Mr. Greene a 'serial sexual harasser,' and repeatedly referenced other unnamed and unidentifiable women who he claims reported allegations of sexual harassment." *Id*.  Defendant Street

responded that as Chairman of PHA's Board of Commissioners, he was a high public official and therefore immune from the defamation and false light invasion of privacy claims. *Id*.

The Honorable Ronald L. Buckwalter concluded that Chairman Street's statements were made pursuant to his authority as Board chairman and that the statements made by Chairman Street were clearly a matter of public concern. *Id*. at *8. *See also Montgomery v. City of Philadelphia*, 392 Pa. 178, 182 (1958) (stating that one of the main reasons for the high public official immunity doctrine is to protect the public's right to be informed; without the privilege, public officials may speak less candidly about government matters for fear of legal recrimination); *Lindner*, 544 Pa. at 497 (courts have held that a high public official's statements are privileged when made during a borough council meeting); *McCormick v. Specter*, 220 Pa.Super. 19, 20 (1971) (finding that a City official holding a press conference on matters pertinent to the public is within the scope of his 'official duties').

Defendant Street was extended absolute immunity from liability for defamation and false light claims when making statements or accusations of sexual misconduct without any criminal charges having been lodged against Plaintiff Greene. *Greene*, at *8.  Here, the Plaintiffs were actually indicted by the federal government.  Still yet they absurdly claim that comments made by Mayor Nutter and Commissioner Ramsey impacted their reputations after the federal government publicly chastised them, verbally and in writing, with detailed accounts of alleged criminal activity.

Because Mayor Nutter's and Commissioner Ramsey's comments, as alleged in the complaints, were closely related to matters of public concern and carried out in their official

duties, they are absolutely immune from liability in their individual capacities on Plaintiffs' defamation and false-light claims.

> ### 2. Plaintiffs' defamation and false-light claims against Mayor Nutter and Commissioner Ramsey in their "Official Capacities" fail as a matter of law.

As argued above, all claims brought against Mayor Nutter and Commissioner Ramsey in their "Official Capacity" are properly treated as an action against the City of Philadelphia. *See* Section B.1, *supra*.

> ### D. Claims Brought Against the City of Philadelphia

> ### 1. Plaintiffs' fail to state federal constitutional claims under *Monell* against the City of Philadelphia.

To prevail under § 1983 against a municipality, a plaintiff must demonstrate that the municipality itself, through the implementation of municipal policy or custom, caused the underlying constitutional violation. *Monell v. Dept. of Social Svcs.*, 436 U.S. 658 (1978). The Supreme Court held in *Monell* that a municipality will not be held liable on the basis of *respondeat superior*; it will only be held liable where there is evidence establishing that the alleged constitutional violation was the result of a municipal policy, custom or practice. *Monell*, *supra*, 436 U.S. at 691-95.

For the reasons stated above, Plaintiffs have failed to state a claim for procedural due process violations, therefore, a claim against the City under *Monell* is not actionable. Should the Court find that Plaintiffs have stated a procedural due process claim, they still fail to plead sufficient facts regarding a municipal policy or custom.

The Court should dismiss the City of Philadelphia from this case because Plaintiffs simply parrot the legal standard for municipal liability under § 1983 without pleading any supporting facts. In *Wood v. Williams*, 568 F. App'x 100 (3d Cir. 2014), the Third Circuit

Court of Appeals affirmed the dismissal of a *Monell* claim. *Id.* at 102.  The plaintiff in *Wood* set forth a series of conclusory allegations that "simply paraphrase[ed]" the elements of *Monell* liability. *Id.* at 103-04.  The Third Circuit held that such "conclusory and general" averments were "insufficient" and "fail[ed] to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability."  *Id.* at 104 (citations and quotations omitted).

In this case, Plaintiffs merely plead that Mayor Nutter and Commissioner Ramsey were policy makers for the City of Philadelphia, and that they promulgated policies based on falsehoods. Sec. Am. Compl. at ¶¶ 31, 37, and 81; Norman Compl. at ¶¶ 16, 22, and 60.  The closest hint to any reference of a City policy is one of the Commissioner and Mayor holding press conferences with the media to discuss federal corruption charges lodged against their police officers.  Plaintiffs attempt to drag the City into their frivolous pursuits is ludicrous.

Such vague and general allegations fail to state a claim, because even averments that "amount to a mere recitation of the . . . elements required to bring forth a *Monell* claim . . . are insufficient to survive a motion to dismiss."[4]  *Butler v. City of Phila.*, No. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013).  Instead, a complaint must include "specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom."  *Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 3008) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).  Plaintiffs' Second Amended Complaint and the Norman Complaint include no such allegations.  Therefore, the Court should dismiss all federal constitutional

---

[4] Here Plaintiffs can barely even recite the elements of a *Monell* claim.

claims against the City. *See Butler*, 2013 WL 5842709, at *2 (granting motion to dismiss complaint that merely parroted the legal standard of *Monell*); *Saleem v. Sch. Dist. of Phila.*, No. 12-3193, 2013 WL 5763206, at *3 (E.D. Pa. Oct. 24, 2013) (dismissing *Monell* claim under Rule 12(b)(6) because plaintiff pled "the 'phraseology' of an alleged policy, practice, procedure, custom and endorsement . . . but [failed to plead] supporting facts"); *Niblack v. Murray*, No. 12-6910, 2013 WL 4432081, at *8-9 (D.N.J. Aug. 14, 2013) (dismissing *Monell* claim because "[p]laintiff fails to allege any facts to support his naked assertion of an unlawful municipal policy or custom"); *Torres*, 2008 WL 2600314, at *5 (dismissing *Monell* claim for failure to plead specific facts).

Plaintiffs also state that the City is vicariously, directly and otherwise liable for certain pertinent acts of Mayor Nutter. Sec. Am. Compl. at ¶ 39; Norman Compl. at ¶ 24. However, there is no vicarious, *respondeat superior* liability under § 1983. *Monell*, 436 U.S. at 694. Moreover, a municipality can be held responsible for a constitutional violation only if the violation occurred as a result of policy, custom or practice. *Id.*

Because Plaintiffs have failed to plead sufficient facts to support their contention that their due process rights were violated as a result of municipal policy, custom or practice, their § 1983 claims should be dismissed against the City of Philadelphia.

### 2. The Pennsylvania Tort Claims Act bars Plaintiffs' defamation and false-light claims against the City of Philadelphia.

Plaintiffs' state law tort claims of defamation and false light against the City of Philadelphia are barred by the PSTCA. The PSTCA shields local agencies and municipalities from liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541.

The PSTCA abrogates this immunity in eight circumstances, none of which apply here.  *See* 42 Pa. Cons. Stat. Ann. § 8542(b) (abrogating immunity for acts involving vehicle liability; personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; and care, custody, or control of animals).  And although individual employees may not claim immunity for intentional torts, *see id.* § 8550, the PSTCA does not abrogate the immunity of municipalities or local agencies for such claims.  *See, e.g.*, *Williams v. City of Chester*, No. 14-4420, 2015 WL 224384, at *3 (E.D. Pa. Jan. 15, 2015) ("By its terms, the exception [for intentional torts] does not abrogate a municipality's grant of immunity set forth in § 8541.").[5]

Because Plaintiffs' state law tort claims of defamation and false light against the City of Philadelphia do not fall within any of the enumerated exceptions to the PSTCA, those claims are barred by the PSTCA.

## IV.    CONCLUSION

For the reasons discussed herein, it is respectfully requested that Municipal Defendants' Motion to Dismiss Second Amended Complaint and the Norman Complaint for Failure to State a Claim be granted and that the aforementioned complaints be involuntarily dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs have failed to articulate a cognizable claim upon which relief may be granted.  Therefore, pursuant to

---

[5] *See also Wakshul v. City of Phila.*, 998 F. Supp. 585, 588 (E.D. Pa. 1998) (granting summary judgment in favor of City on allegations that officer had committed assault, battery, and other intentional torts); *Verde v. City of Phila.*, 862 F. Supp. 1329, 1337 (E.D. Pa. 1994) (concluding that municipality's immunity was not waived for intentional torts committed by City's employees); *Smith v. City of Chester*, 851 F. Supp. 656, 659 (E.D. Pa. 1994) (granting summary judgment for City and noting that while "section 8550 . . . abrogates immunity of individual employees for their willful and wanton acts, it does not abrogate the immunity provided to the local agency").

Fed. R. Civ. P. 12(b)(6) all claims against Municipal Defendants' should be dismissed with prejudice.

                                              Respectfully submitted,

Date:  <u>November 5, 2015</u>                <u>   /s/ Dimitrios Mavroudis   </u>
                                              Dimitrios Mavroudis
                                              Deputy City Solicitor
                                              Pa. Attorney ID No. 93773
                                              City of Philadelphia Law Department
                                              1515 Arch Street, 17th Floor
                                              Philadelphia, PA 19102
                                              (215) 683-5444
                                              dimitrios.mavroudis@phila.gov