IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. OTTO, et al., : | |
|     Plaintiffs, : | |
| : | |
|     v. : | Civ. No. 15-3217 |
| : | |
| R. SETH WILLIAMS, et al., : | |
|     Defendants. : | |
| : | |

**Diamond, J.,**                                                                                                                                                       **June 6, 2016**

### MEMORANDUM

Plaintiffs are Philadelphia Narcotics Officers, charged in this Court with a years-long conspiracy to rob and extort money from suspected drug-dealers and others. While the charges were pending, Plaintiffs were transferred and then fired. After a seven-week trial, however, Plaintiffs were acquitted and, through labor arbitration, reinstated with back pay and cleared personnel records. Unsatisfied with this relief, Plaintiffs have sued the City of Philadelphia, its District Attorney and District Attorney's Office, as well as its former Mayor and Police Commissioner. The gravamen of their Complaint—their acquittals and reinstatements notwithstanding—is that they were denied due process. In response to Defendants' Motions to Dismiss, Plaintiffs seek to withdraw almost all their claims—some with prejudice; some without. I will dismiss all claims with prejudice. It is evident that Plaintiffs' Complaint (which reads more like a press release than a pleading), has no basis in law.

**I.**     **Procedural Background**

Plaintiffs are Narcotics Officers Robert G. Otto, Michael Spicer, Brian Reynolds, Perry Betts, John Speiser, Thomas Liciardello, and Linwood Norman. In July 2014, the grand jury charged six of the seven Officers with RICO conspiracy, conspiracy to deprive

civil rights, deprivation of civil rights, robbery, extortion, carrying a firearm during and in relation to a crime of violence, possession with intent to distribute over 500 grams of cocaine, falsification of records in a federal investigation, and aiding and abetting.  (Doc. No. 1 in Crim. No. 14-412); 18 U.S.C. §§ 2, 241, 242, 924(c)(1), 1519, 1951(a), 1962(d); 21 U.S.C. § 841; see U.S. ex rel. Spay v. CVS Caremark Corp., 913 F. Supp. 2d 125, 139 (E.D. Pa. 2012) ("On a motion to dismiss, courts take judicial notice of documents which are matters of public record such as . . . court-filed documents.") (citations omitted).  On July 30, 2014, the Philadelphia Police Department terminated the six indicted Officers.

Judge Robreno presided over Plaintiffs' criminal jury trial.  Opening statements began on March 30, 2015.  (Doc. No. 375 in Crim. No. 14-412.)  The Government called some 40 witnesses.  (Doc. No. 452.)  Plaintiffs called over 20 witnesses; Plaintiff Spicer testified on his own behalf.  (Doc. Nos. 459, 465.)  On May 14, 2015, after five days of deliberation, the jury acquitted on all charges.  (Doc. Nos. 503-04.)

A labor arbitrator reinstated the Officers with back pay and expunged any reference to the terminations from their personnel records.  The seventh Officer in this action, Otto, was not indicted, terminated, or suspended.

On November 21, 2013, all Plaintiffs (except Norman) commenced this action by filing a writ of summons in the Philadelphia Common Pleas Court.  (Doc. No. 27 ¶ 1 in Civ. No. 15-3217.)  Plaintiffs did not file their state-court Complaint until June 4, 2015, shortly after their acquittals, but before reinstatement.  Defendants removed to this Court on June 9, 2015.  (Doc. No. 1.)

Judge Restrepo (to whom this matter was initially assigned) granted Plaintiffs leave to amend.  (Doc. No. 5.)  On July 24, 2015, Plaintiffs filed their First Amended Complaint,

bringing false light, defamation, and procedural due process claims. (Doc. No. 10.) On August 5, 2015, the case was reassigned to me. (Doc. No. 11); E.D. Pa. Local R. 40.1(c)(2).

After Defendants moved to dismiss, I granted Plaintiffs leave to amend. (Doc. Nos. 16-18.) On October 13, 2015, Plaintiffs filed the instant Second Amended Complaint, adding factual allegations. (Doc. No. 27.) On October 16, 2015, Norman, represented by the same counsel as the other Plaintiffs, filed his own Complaint in the Philadelphia Common Pleas Court, with virtually identical allegations and the same claims as those in the Second Amended Complaint. On October 20, 2015, Defendants removed Norman's action to this Court. (Doc. No. 1 in Civ. No. 15-5690.) On October 23, 2015, I granted Defendants' unopposed Motion to consolidate both actions. (Doc. No. 31 in Civ. No. 15-3217.)

On November 5, 2015, Defendants Williams and the District Attorney's Office moved to dismiss the Second Amended Complaint, and on November 6, 2015, Commissioner Ramsey, Mayor Nutter, and the City of Philadelphia moved to dismiss. (Doc. Nos. 32, 34.) On December 12, 2015, Plaintiff responded. (Doc. No. 38.)

## II. Factual Allegations

Plaintiffs, who "characterize[]" themselves "as heroic," bring the instant action to obtain relief from "the disgraceful calumnies" and "cruel farce" they "have been subjected to by the Defendants." (Doc. No. 27 ¶¶ 50, 138, 142.) Having been acquitted because the case against them "was literally laughable and disgraceful," Plaintiffs have suffered an "avalanche of injustices" and "destruction." (Id. ¶¶ 10, 69, 76.)

In Plaintiffs' view, their victimization resulted from Plaintiff Liciardello's "very blunt, speak-his-mind, get-things-done, personality," and the "D.A. Office's desire to receive more credit for narcotics successes and receive a greater share of seized and forfeited drug money."

3

(Id. ¶¶ 72-75.)  Motivated by these "petty or non-pertinent . . . conflicts . . . and resentments," on December 3, 2012, District Attorney Williams sent then-Commissioner Ramsey "an entirely misbegotten and irresponsible letter" regarding all Plaintiffs except Norman, stating that, "in an exercise of prosecutorial discretion," the Philadelphia D.A.'s Office would no longer: 1) call Plaintiffs as witnesses in narcotics cases; 2) charge narcotics cases where a Plaintiff would be a necessary witness; and 3) approve warrants where a Plaintiff was the affiant or if the warrant included averments from any Plaintiff.  (Id. ¶¶ 3, 5, 51, 72.)  On December 4, 2012, all Plaintiffs except Norman (who was not mentioned in Williams' letter) were transferred from Narcotics to other units.  (Id. ¶ 90.)

The D.A.'s Office informed the public of these transfers, which led to news reports. (Id. ¶ 98.)  Commissioner Ramsey also "publicized and disseminated the substance and contents of [Williams'] letter."  (Id. ¶ 100.) The D.A.'s Office eventually withdrew or dismissed hundreds of criminal cases involving Plaintiffs.  (Id. ¶¶ 100-05.)  These events led to the filing of dozens of civil rights lawsuits against Plaintiffs.  (Id. ¶ 128.)

On January 17, 2014, Commissioner Ramsey stated at a press conference that a federal grand jury was investigating at least four Plaintiffs, and that he was removing all seven Plaintiffs from street duty and would require them to surrender their weapons.  (Id. ¶¶ 106-08; see also Doc. No. 1 ¶¶ 86-89 in Civ. No. 15-5690 (Norman Compl.).)  On July 29, 2014, the grand jury indicted all Plaintiffs except Otto.  (Id. ¶ 113); (Doc. No. 1 in Crim. No. 14-412.)  The charges were based on twenty-two distinct episodes of alleged criminal conduct.

On July 30, 2014, the six indicted Plaintiffs were fired.  (Doc. No. 27 ¶ 179 in Civ. No. 15-3217.)  The next day, Commissioner Ramsey and Mayor Nutter held a joint press

conference at which they addressed the Indictment and announced the terminations. (Id. ¶ 114.) Ramsey stated: "I have been a police officer for more than 40 years and this is one of the worst corruption cases that I have ever heard." He also announced that the indicted Plaintiffs' badges would be destroyed. (Id. ¶¶ 116-17.) Mayor Nutter called the indicted Plaintiffs "sick scumbags." (Id. ¶ 115).

After Plaintiffs' May 14, 2015 acquittal, Commissioner Ramsey told the press: "I thought that the U.S. Attorney had a **good case**, but **unfortunately** the jury didn't agree." (Id. ¶ 134 (emphasis in original).) The acquitted Plaintiffs filed grievances pursuant to the Police Union's Collective Bargaining Agreement with the City. (Id. ¶ 177.) On July 10, 2015, an arbitrator reinstated them "with back pay," finding that there was "no just cause" for the terminations. (Id. ¶¶ 122, 179.) The arbitrator further ordered the terminations expunged from Plaintiffs' personnel records and prohibited the City "from rely[ing] or mak[ing] reference to that discharge for any employment related purpose in the future." (Id. ¶ 181.) On July 27, 2015, the Philadelphia Daily News quoted Commissioner Ramsey: "It is very, very unfortunate that the U.S. Attorney's Office did not win the case." It also quoted D.A. Williams stating that the acquittal would "not alter [the D.A.'s Office's] approach concerning these officers." (Id. ¶ 136.)

### III. The Instant Complaint

Proceeding against all Defendants, Plaintiffs allege: 1) false light; 2) defamation; and 3) "stigma-*plus*" procedural due process violations. 42 U.S.C. § 1983.

Plaintiff Otto's § 1983 claim relates only to his December 2012 transfer from the Narcotics Unit and January 2014 removal from street duty; he was never indicted or terminated. As to the remaining six indicted Plaintiffs, their § 1983 claims involve their

December 2012 transfer, January 2014 removal from street duty, July 2014 termination, May 2015 acquittal, and July 2015 reinstatement.

Plaintiff Norman, who was indicted, is the only Plaintiff who was not subject to the December 2012 transfer or mentioned in D.A. Williams' December 3, 2012 letter to Commissioner Ramsey. Otherwise, his § 1983 claim entails the same events as those of the other indicted Plaintiffs.

### IV. Plaintiffs Seek to Withdraw Much of the Instant Action

Faced with compelling dismissal motions, all Plaintiffs ask to "withdraw[] all claims" against Williams and the D.A.'s Office, presumably with prejudice. (Doc. No. 38 at 11.) They also seek to "withdraw[] *without* prejudice" their false light and defamation claims against the other Defendants. (Id. at 10-11 (emphasis added).) Plaintiff Otto apparently also wishes to withdraw as "a party Plaintiff without prejudice." (Id.) Were I to accede to Plaintiffs' requests, the only claim remaining would be Plaintiffs' § 1983 procedural due process claim against Mayor Nutter, Commissioner Ramsey, and the City.

Plaintiffs' decision to withdraw wholesale their most incendiary claims before any discovery has been taken is troubling, to say the least. See Fed. R. Civ. P. 11(b) (claims must be brought in good faith). This highly unusual action suggests that even though there is no reasonable basis to prosecute the claims, Plaintiffs nonetheless wish to retain the right to bring them again. See Orman v. Citimortgage, 2016 WL 1592948, at *8 (E.D. Pa. Apr. 21, 2016) (refusing to permit withdrawal of claims without prejudice because "[p]laintiffs concede[d] that the claims they have set forth in the Amended Complaint are without merit" and plaintiffs "would knowingly violate Rule 11" if they again pursued those claims). In

6

these circumstances, Plaintiffs withdrawal of some claims with prejudice and some without is not permissible.

Although Rule 41(a)(1)(i) allows the withdrawal without prejudice of *all* claims against a defendant before an answer is filed, it does not provide for selective withdrawal. See Chan v. Cnty. of Lancaster, 2013 WL 2412168, at *15-16 (E.D. Pa. June 4, 2013) (Rule 41(a)(1) "does not allow for piecemeal dismissals"); Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 224 F.R.D. 601, 605 (E.D. Pa. 2004) ("The majority of courts have adopted the view that Rule 41(a) allows a plaintiff to voluntarily dismiss its entire case against one defendant, while maintaining the case against the remaining defendants.") (citations omitted).

To withdraw without prejudice fewer than all claims against Defendants, Plaintiffs must seek leave to amend their Second Amended Complaint. See Chan, 2013 WL 2412168, at *16 ("The proper procedural mechanism for dismissing less than all of the claims [without prejudice] in an action is a motion to amend under Federal Rule of Civil Procedure 15(a).") (citing 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362, at 413-14 (3d ed. 2008)); see also Ctr. for Orthopedics & Sports Med. v. Horizon, 2015 WL 5770385, at *2 (D.N.J. Sept. 30, 2015) (same). They have not done so.

In these circumstances, I will not allow Plaintiffs to withdraw some of their claims without prejudice. See Orman, 2016 WL 1592948, at *8. Rather, I will address Defendants' Motions and determine whether each of Plaintiffs' claims is plausible and cognizable.

**V.      Legal Standards for a Motion to Dismiss**

In deciding a motion to dismiss, I must accept factual allegations and disregard legal conclusions or mere *recitations* of the elements. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). I must then determine whether the facts alleged make out a "plausible"

claim. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## VI. Discussion

Defendants argue that Plaintiffs' false light and defamation claims are barred by statute and common-law absolute immunity. Defendants also contend that Plaintiffs have failed to make out a "stigma-plus" § 1983 claim because: 1) Otto—who was never discharged, suspended, or demoted—suffered no legally cognizable injury; and 2) the remaining six Plaintiffs—who were indicted and terminated, but subsequently acquitted and reinstated—have failed to allege a plausible due process violation. Finally, the Defendants assert immunity defenses to the § 1983 claim.

I conclude that the false light and defamation claims are noncognizable. Because I also conclude that Plaintiffs have failed to make out a plausible § 1983 violation, I need not address Defendants' immunity arguments.

### A. False Light and Defamation

Plaintiffs concede that the Pennsylvania Torts Claims Acts bars their false light and defamation claims against the D.A.'s Office and the City of Philadelphia. See 42 Pa. Const. Stat. Ann. § 8541 ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."); id. § 8542 (exceptions).

Plaintiffs also concede that state law absolutely immunizes D.A. Williams, Mayor Nutter, and Commissioner Ramsey. As the Third Circuit has explained:

> Pennsylvania's doctrine of absolute privilege for high public officials is "unlimited and exempts a high public official from all civil suits for damages

>arising out of false defamatory statements and even from statements or actions motivated by malice" . . . . The privilege is not for the benefit of the official, but to protect "society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business."

Heller v. Fulare, 454 F.3d 174, 177 (3d Cir. 2006) (quoting Matson v. Margiotti, 88 A.2d 892, 895 (Pa. 1952); Lindner v. Mollan, 677 A.2d 1194, 1195 (Pa. 1996)); see also Greene v. Street, 2011 WL 208382, at *8 (E.D. Pa. Jan. 20, 2011) (public official was absolutely immune from liability for comments he made to the press about sexual harassment charges against a city agency's executive director) (citing Montgomery v. City of Philadelphia, 140 A.2d 100, 105 (Pa. 1958)); Osiris Enterprises v. Borough of Whitehall, 877 A.2d 560, 568 (Pa. Commw. Ct. 2005).

Accordingly, I will dismiss Plaintiffs' false light and defamation claims with prejudice as to all Defendants.

    B.  Stigma-Plus Procedural Due Process Claim

*Legal Standards*

Courts have repeatedly held that "reputation *alone* is not an interest protected by the Due Process Clause." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (quoting Versarge v. Twp. of Clinton, 984 F.2d 1359, 1371 (3d Cir. 1993) (emphasis in original)). Accordingly, a plaintiff seeking redress under the Due Process Clause for deprivation of a liberty interest in reputation "must show a stigma to his reputation *plus* deprivation of some additional right or interest." Id. (emphasis in original). In the instant case, Plaintiffs must allege that they suffered both a stigma (such as the dissemination of a false or defamatory statement) and a "plus" (such as termination, constructive discharge, suspension, or demotion). Id. ("The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'"); see also Dee v. Borough of

9

Dunmore, 549 F.3d 225, 234 (3d Cir. 2008) (suspension without cause in violation of a collective bargaining agreement may also be a "plus"). In addition to the stigma and the "plus," Plaintiffs must allege that "the [remedial] procedures available did not provide 'due process of law.'" Hill, 455 F.3d at 234.

*The "Plus"*

Plaintiffs allege that their December 2012 transfers from the Narcotics Unit, their January 2014 reassignment from street duty, and their July 2014 terminations make out a "plus." As I have explained, however, the "plus" must be termination, constructive discharge, suspension, or demotion—not reassignment. See Hill, 455 F.3d at 238-39; Dee, 549 F.3d 225 at 234; Clark v. Twp. of Falls, 890 F.2d 611, 620, 624-25 (3d Cir. 1989) (no actionable stigma-plus claim because the "change in [the officer's] duties did not constitute a reduction in rank"); Williams v. Bd. of Supervisors Conewago Twp., 2016 WL 146566, at *2 (3d Cir. Jan. 13, 2016) (plaintiff failed to state a stigma-plus claim where he did not allege that he was "actually suspended or terminated") (quoting Clark, 890 F.2d at 620; Dee, 549 F.3d at 234); see also Skrutski v. Marut, 288 F. App'x 803, 808-09 (3d Cir. 2008) ("loss of overtime does not constitute [a] protected property interest even in [the] procedural due process context") (citations omitted).

Accordingly, only the terminations of the six indicted Plaintiffs make out a cognizable "plus." The mere transfer of Plaintiff Otto (who was never fired) does not. Hill, 455 F.3d at 236 ("[T]he termination is the 'plus.'"); see Wardlaw v. City of Phila., 2011 WL 1044936, at *5 (E.D. Pa. Mar. 21, 2011) ("In cases where the officer retains his rank and salary, and 'was not left without any job functions,' the Third Circuit has refused to find any constructive reduction in rank, regardless of whether the officer 'clearly did not like the changes in his

duties' and had experienced 'genuine distress.'") (quoting Clark, 890 F.2d at 618); see also Henry, 2013 WL 81394, at *3.

In sum, I will dismiss Otto's stigma-plus claim because he has not alleged a cognizable "plus." I will address whether the six indicted (and terminated) Plaintiffs have made out the remaining elements of their due process claim.

*Challenged Statements*

A public official's disparaging utterance alone is insufficient to make out an actionable "stigma." Rather, the stigmatizing statement must be made "in connection with" the plaintiff's property deprivation. Hill, 455 F.3d at 236 (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)); Siegert v. Gilley, 500 U.S. 226, 234 (1991) (stigmatizing statements must be made "incident to the [plaintiff's] termination"). Accordingly, in the instant case—where the property deprivation was each Plaintiff's termination—the "alleged defamatory statement and the firing must be at least roughly contemporaneous." Orelski v. Bowers, 303 F. App'x. 93, 94 (3d Cir. 2008). An interval of even two months between the termination and the statement is not "roughly contemporaneous." Id. at 94-95 ("nearly two and a half months" gap between statements and a police officer's termination was "[s]uch a long delay eviscerate[ing] any temporal nexus between the statements and the termination"); Pasour v. Phila. Hous. Auth., 67 F. Supp. 3d 683, 696-97 (E.D. Pa. 2014) (four to eight months is "too long"); Sampson v. Sch. Dist. of Lancaster, 2009 WL 1675083, at *9 (E.D. Pa. June 12, 2009) (statements made less than two months after plaintiff's termination were not "roughly contemporaneous").

All but two of the statements Plaintiffs challenge were not made "in connection" with their terminations, and so are not actionable. Hill, 455 F.3d at 236. Plaintiffs' terminations

11

occurred on July 30, 2014.  The December 2012 public statements of Williams and the D.A.'s Office regarding the decision not to prosecute certain cases plainly were not "roughly contemporaneous."  LaRose, 2010 WL 1254305, at *3 n.4 (citing Orelski, 303 F. App'x at 94).  Because Plaintiffs have thus failed to allege that the D.A.'s Office or Williams made any stigmatizing statements "in connection" with their terminations, Plaintiffs have failed to make out a stigma-plus claim against these Defendants.  Hill, 455 F.3d at 236.

Similarly, Commissioner Ramsey's announcement in December 2012 that he was transferring the Officers from the Narcotics Unit was not "roughly contemporaneous" with the July 2014 terminations.  Orelski, 303 F. App'x at 94-95; Pasour, 67 F. Supp. 3d at 696-97; LaRose, 2010 WL 1254305 at *3; Sampson, 2009 WL 1675083, at *9.  Ramsey's January 2014 announcement of his decision to remove Plaintiffs from street duty and confiscate their guns was likewise not "incident to" the terminations, which occurred nearly six months later.  Siegert, 500 U.S. at 234; Orelski, 303 F. App'x at 94-95.  Finally, the Commissioner's statements in May and July, 2015 (ten to twelve months after the terminations) that he thought the jury verdict was "unfortunate" are also too remote.  See id.

The six indicted Plaintiffs thus challenge only two statements that were made "in connection with" their terminations: 1) Commissioner Ramsey's statement at a press conference on the day of the firings that this was "one of the worst corruption cases that I have ever heard [of]"; and 2) Mayor Nutter's statement at the same press conference that Plaintiffs are "sick scumbags."  Hill, 455 F.3d at 236 ("The creation and dissemination of a false and defamatory impression is the 'stigma.'").  These statements were made "in connection" with the terminations.  Id. at 236.  The City of Philadelphia and the D.A.'s Office could be liable for their statements.  See id. at 245 (a municipality can be liable for its

12

Mayor's stigmatizing statements) (citing Monell v. Dep't. of Soc. Servs., 436 U.S. 658 (1978)).

Because the six Plaintiffs have thus adequately alleged both the "stigma" (the two statements) and a "plus," (the firings), I must determine whether the remedial procedures available to them "comported with due process of law." Chan v. Cnty. of Lancaster, 2011 WL 4478283, at *9 (E.D. Pa. Sept. 26, 2011) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

*The Process Afforded Plaintiffs*

An employee stigmatized in connection with her termination is "entitled to a name-clearing hearing." Hill, 455 F.3d at 236; see also Codd v. Velger, 428 U.S. 624, 627 (1977) ("[T]he hearing required where a [public] employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.'"); Graham v. City of Phila., 402 F.3d 139, 145 (3d Cir. 2005) ("The procedural protections required by the Due Process Clause are determined with reference to the particular rights and interests at stake in a case.") (quoting Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997)); Ersek v. Twp. of Springfield, 102 F.3d 79, 84 (3d Cir. 1996) ("The principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is a hearing to clear his name.").

The Third Circuit recognizes two procedures that satisfy this due process requirement: 1) a criminal trial that results in acquittal; or 2) a public employer's provision of a grievance and arbitration procedure. Graham, 402 F.3d at 144 (a criminal trial "satisfie[s] the requirements of" a name-clearing hearing); Dykes v. SEPTA, 68 F.3d 1564, 1572 (3d Cir. 1995) ("Where a due process claim is raised against a public employer, and grievance and

13

arbitration procedures are in place, we have held that those procedures satisfy due process requirements.").

Here, Plaintiffs allege that they were afforded both a criminal trial and an arbitration. Plaintiffs acknowledge that their criminal trial resulted in their acquittals on all charges. (Doc. No. 27 ¶ 122.) This satisfies the name-clearing hearing requirement. See Graham, 402 F.3d at 147 ("[When] an individual acquitted at [a criminal] trial advances a stigma-plus claim, . . . [the] individual is not entitled to a name-clearing hearing under the Due Process Clause."). The Graham Court explained that a criminal trial's "stringent procedural safeguards and difficult burden of proof afford[s] [] more 'process' than [] ever could have expected to receive at an administrative hearing . . . under the . . . Mathews standard." Id. (quoting Greene v. Finley, 749 F.2d 467, 472 (7th Cir. 1984)); see Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"). Plaintiffs' suggestion that due process requires the opportunity to prove their innocence has no basis in law. Graham, 402 F.3d at 141, 145 (rejecting the "premise . . . that a name-clearing hearing must provide one with the opportunity to prove actual innocence of the alleged criminal conduct"). Plaintiffs have thus failed to make out a plausible due process claim. See Hill, 455 F.3d at 325.

Assuming, *arguendo*, that their seven-week criminal trial somehow provided inadequate process, Plaintiffs' successful union grievance cured any defect. See Hill, 455 F.3d at 238-39 (public employee's grievance process "will ordinarily afford those employees an opportunity to refute stigmatizing allegations") (quoting Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1109 n.15 (D.C. Cir. 1985)); Dykes, 68 F.3d at 1571 (grievance and arbitration

procedures satisfy due process) (citing Jackson v. Temple Univ., 721 F.2d 931 (3d Cir. 1983)).

As alleged, the arbitrator upheld Plaintiffs' grievances, reinstated them, awarded them back pay, and determined there was no just cause to terminate them. (See Doc. No. 27 ¶ 129 ("The damages [Plaintiffs seek] do not include any lost pay, compensation, benefits, overtime, etc., contractually owed . . . nor does the relief sought include any request for return of assignments/positions jobs, etc. Those items of damages and relief are the province of the City's arbitration process.").) The arbitrator also ordered the terminations expunged from their personnel records, and prohibited the City from relying on or referring to the discharges "for any employment related purpose in the future." (Id. ¶ 181.)

Plaintiffs nonetheless argue that the arbitration did not comport with due process because it did not eliminate the "blackening of their reputations in the eyes of prospective employers." (Id. ¶ 131; Doc. No. 38-1 at 22.) Due process requires only an opportunity to be heard, however. Codd, 429 U.S. at 628 ("[T]he hearing . . . is solely 'to provide the person an opportunity to clear his name.'"). In this context, due process has never been understood to require the opportunity to cure all reputational harm. See Hill, 455 F.3d at 235; Graham, 402 F.3d at 145; Mathews, 424 U.S. at 333. Accordingly, a due process violation based on a "possible loss of future employment opportunities" is not actionable. Clark, 890 F.2d at 620; Kelly v. Borough of Sayreville, N.J., 107 F.3d 1073, 1078 (3d Cir. 1997) ("Furthermore, we rejected the plaintiff's claim in Clark to the extent that he predicated it on an argument that the defendants' actions diminished his future employment prospects.").

In sum, the terminated Plaintiffs' § 1983 stigma-plus claim is not plausible because Plaintiffs have failed to make out that their criminal trial and arbitration "did not provide 'due

process of law.'"  Hill, 455 F.3d at 234 (quoting Alvin, 227 F.3d at 116).  Accordingly, I will dismiss the claim with prejudice as to all Defendants.

### VII. Conclusion

This is not a close case.  All Plaintiffs' claims are either implausible, non-cognizable, or both.  In these circumstances, Defendants are entitled to a dismissal of all claims with prejudice.

An appropriate Order follows.

*/s/ Paul S. Diamond*

_____

**Paul S. Diamond, J.**